**UNITED STATES of America, Plaintiff,**

v.

**Peter BUDA, Defendant.**

**No. CR–88–150T.**

United States District Court,
W.D. New York.

Aug. 31, 1989.

U.S. Attorney's Office (Bradley Tyler, Ass't U.S. Atty., of counsel), Rochester, N.Y., for plaintiff.

Terrence Connors, Buffalo, N.Y., for defendant.

## DECISION AND ORDER

TELESCA, Chief Judge.

### STATEMENT OF THE CASE

Defendant Peter Buda has moved to suppress evidence of a taped conversation with a Government informant made prior to his indictment on the grounds that the Government's prosecutor violated MODEL CODE OF PROFESSIONAL RESPONSIBILITY DR 7–104(A)(1) when he consented to the wired communication without first notifying the defendant's attorney. For the reasons discussed below, I find the prosecution's conduct to fall well within the boundaries of DR 7–104(A)(1) established in *United States v. Hammad*, 858 F.2d 834 (2d Cir.1988) and accordingly the defendant's motion to suppress is denied.

In February of 1988, Assistant United States Attorney Bradley Tyler learned that Peter Buda had retained John Speranza to represent him in a matter for which he was being investigated. Mr. Speranza told Mr. Tyler at that time that his client requested that Mr. Speranza be contacted in the event

of an indictment to arrange for his voluntary surrender.

On March 18, 1988, Monroe County Sheriff Investigator Gary Caiola told Mr. Tyler that he had intentions of placing a wire on an acquaintance of Mr. Buda, Mr. Barletta, for the purpose of recording an anticipated meeting between the two. While Mr. Tyler did not object to the use of such investigatory procedures, he gave Mr. Caiola no directions concerning the matter. There were no further discussions between Caiola and Tyler nor was Attorney Speranza contacted regarding the proposed wiring until after the recording was made on April 7, 1988.

### DISCUSSION

Rule DR 7–104(A)(1) of the American Bar Association's Model Code of Professional Responsibility governs relations between attorneys and adverse parties they know to be represented by counsel. It provides:

A. During the course of his representation of a client, a lawyer shall not:

1. Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

In *United States v. Hammad*, 858 F.2d 834 (2d Cir.1988), the Second Circuit Court of Appeals squarely addressed the applicability and scope of this rule to Government prosecutors in criminal cases. In that case, the Government prosecutor had directed an informant to arrange and record his conversations with the defendant, and had actually supplied him with a counterfeit Grand Jury subpoena to show the defendant during one of their meetings. The Court found that the disciplinary rule was aimed at safeguarding against such "egregious" prosecutorial misconduct by insuring that Government prosecutors not "overstep the already broad powers of … [their] office." *Id.* at 840. The Court recognized the need, however, to balance the imposition of adequate safeguards required

by DR 7–104(A)(1) with the State's legitimate interest in conducting criminal investigations. Thus, while it held the rule to apply to criminal investigations prior to the attachment of a defendant's Sixth Amendment rights, it "urge[d] restraint in applying the rule ... to avoid handcuffing law enforcement officers in their efforts to develop evidence." *Id.* at 838. The Court concluded that "[t]he use of informants by Government prosecutors in a pre-indictment, non-custodial situation, absent the type of egregious misconduct that occurred in this case, will generally fall within the 'authorized by law' exception to DR 7–104(A)(1) and therefore will not be subject to sanctions [such as suppression.]" *Id.* at 840.

■ Even though the prosecutor in this case was aware that the defendant was represented at the time of the recordings, I find his conduct to fall well within the "authorized by law" exception to DR 7–104(A)(1). Assistant United States Attorney Tyler did nothing more than acquiesce to the wiring of informant Barletta and in no way attempted to direct the content of his conversation with the defendant so as to beguile him into giving his case away. *See United States v. Jamil,* 707 F.2d 638, 646 (2d Cir.1983) (DR 7–104(A)(1) "protect[s] defendant from danger of being 'tricked' into giving his case away by opposing counsel's artfully crafted ques-

tions."); *United States v. Kurzban,* 703 F.Supp. 5 (E.D.N.Y.1989). As the Second Circuit explained in *Hammad,* a prosecutor is " 'authorized by law' to employ legitimate investigative techniques in conducting or supervising criminal investigations, and the use of informants to gather evidence against a suspect will frequently fall within the ambit of such authorization." *Hammad,* 858 F.2d at 839. The prosecutor's actions here clearly do not constitute the type of "egregious misconduct" contemplated by the Court in *Hammad* sufficient to support the "extreme remedy" of suppression.[1] *Id.* 858 F.2d at 837.

■ Furthermore, I find that the denial of the defendant's motion for suppression of the recording is supported on a wholly separate ground. The Second Circuit in *Hammad* reversed the District Court's decision to suppress despite the prosecutor's "egregious misconduct," holding that "the Government should not have its case prejudiced by suppression of its evidence when the law was previously unsettled in this area." *Id.* at 842. While the recorded conversation between Barletta and the defendant took place on April 7, 1988, the Second Circuit did not decide *Hammad* until May 12, 1988.[2] The law was, therefore, no more settled at the time the tape was made in this case than when the recordings were made in *Hammad. See United States v. Chestman,* 704 F.Supp. 451, 454

---

1. While the defendant argues ardently in his brief that the boundaries of prosecutorial misconduct proscribed under DR 7–104(A)(1) can be defined with reference to Sixth Amendment jurisprudence, I find this analogy unpersuasive. As the Second Circuit stated in *Hammad,* "the [S]ixth [A]mendment and the disciplinary rule serve separate, albeit congruent purposes." *Hammad,* 858 F.2d at 839. The Sixth Amendment protections arise automatically once adversary proceedings have been initiated in "recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself." *Maine v. Moulton,* 474 U.S. 159, 169, 106 S.Ct. 477, 483, 88 L.Ed.2d 481 (1985) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 462–63, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938)). DR 7–104(A)(1), on the other hand, is concerned principally with professional standards of conduct and thus requires a more flexible approach. Indeed, the Second Circuit in *Hammad* explicitly rejected the type of *per se* approach to the disciplinary rule that it has

adopted in the Sixth Amendment area, stating that an across-the-board application of DR 7–104(A)(1), even when the Government knows that an individual has retained counsel with respect to a criminal matter in which he is held suspect, is "unduly restrictive." *Id.* at 839. The Court thus clearly felt that there would be many instances of prosecutorial conduct which might implicate Sixth Amendment concerns but which would not require application of DR 7–104(A)(1).

2. This date refers to the Second Circuit's first decision in *United States v. Hammad,* 846 F.2d 854 (2d Cir.1988) ("Hammad I") issued on May 12, 1988 which was later revised to its current form in *United States v. Hammad,* 858 F.2d 834 (2d Cir.1988) issued on September 23, 1988. Regardless of the case to which one might refer, however, neither decision was handed down prior to the making of the recording in this case.

(S.D.N.Y.1989); *United States v. Galanis,* 685 F.Supp. 901, 903–04 (S.D.N.Y.1988). Accordingly, I find that the uncertainty of the law at the time of the recording also requires that the defendant's motion to suppress be denied. The Magistrate's Report and Recommendation is hereby adopted in its entirety.

ALL OF THE ABOVE IS SO ORDERED.