UNITED STATES of America

v.

**Louis SCOZZAFAVA and Alvin Rhoney, Defendants.**

UNITED STATES of America

v.

**Louis SCOZZAFAVA, Defendant.**

Nos. 92–CR–70A, 92–CR–237A.

United States District Court,
W.D. New York.

Sept. 22, 1993.

Patrick H. NeMoyer, U.S. Atty., Buffalo, NY, for the Government (Denise E. O'Donnell, Asst. U.S. Atty., of counsel).

Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, Buffalo, NY, for defendant Scozzafava (Joseph M. Latona, of counsel).

Stiller and Pieri, Buffalo, NY, for defendant Rhoney (John P. Pieri, of counsel).

## ORDER

ARCARA, District Judge.

### INTRODUCTION AND BACKGROUND

The above captioned cases were referred to Magistrate Judge Leslie G. Foschio, pursuant to 28 U.S.C. § 636(b)(1). Indictment 92–CR–70A charges defendants Louis Scozzafava and Alvin Rhoney with devising a scheme to defraud and obtain monies from the Niagara County Department of Social Services and, in furtherance of said scheme, using the Postal Service in violation of 18 U.S.C. § 1341. Indictment 92–CR–237A charges defendant Scozzafava with one count of accepting a bribe in violation of 18 U.S.C. § 666(a)(1)(B). Below is a brief summary of the proceedings in these actions relative to the matters presently before the Court.

On June 8, 1992, in Indictment 92–CR–70A, defendants moved for discovery under 18 U.S.C. § 2518(8)(d) and Fed.R.Crim.P. 16 of certain information obtained on wiretaps of John Gross and Arthur Curcione. On July 31, 1992, Magistrate Judge Foschio denied defendants' requests for these wiretaps. On August 6, 1992, Scozzafava filed objections to the Magistrate Judge's decision and Magis-trate Judge Foschio considered the objections as a motion to reconsider. On October 22, 1992, Magistrate Judge Foschio directed the government to file an *in camera* affidavit with respect to the wiretap material.

On November 25, 1992, Magistrate Judge Foschio filed a Memorandum and Order denying Scozzafava's motion with respect to the Gross wiretap but did not address the Curcione wiretap. On December 3, 1992, Scozzafava filed objections with the Court to the November 25, 1992 Memorandum and Order.

On December 8, 1992, in Indictment 92–CR–70A, Scozzafava filed an additional motion seeking suppression of statements of the defendant based on a purported violation of Disciplinary Rule ("DR") 7–104(A)(1) by an Assistant United States Attorney, severance from codefendant Rhoney pursuant to Fed.R.Crim.P. 14, and an order excluding any evidence pursuant to Fed.R.Evid. 404(b). Rhoney joined in these motions by letter dated January 22, 1993.

On January 12, 1993, in Indictment 92–CR–237A, Scozzafava moved for a bill of particulars, disclosure of Fed.R.Evid. 404(b) evidence, and *Brady* material. On January 25, 1993, the government filed a bill of particulars and a response to Scozzafava's motions. On February 1, 1993, Scozzafava filed a reply memorandum seeking further particularization and a schedule for disclosure of *Brady* material similar to the schedule which had been previously ordered in Indictment 92–CR–70A.

On January 14, 1993, Scozzafava moved this Court for a *de novo* determination of his request for disclosure of wiretap material pursuant to 18 U.S.C. § 2518(8)(d).

On June 24, 1993, Magistrate Judge Foschio filed a Decision and Order denying the motion for disclosure of the Curcione wiretaps, the severance motion, the motion for further particularization, the motion for suppression of Rule 404(b) material with leave to renew at or prior to trial, and setting a schedule for disclosure of Rule 404(b) *Brady* material. Magistrate Judge Foschio *also* filed a Report and Recommendation on the same date recommending denying Scozzafava's suppression motion with regard to the

statements allegedly obtained in violation of DR 7–104(A)(1) by the government.

On July 2, 1993, this Court filed a Decision and Order finding that Magistrate Judge Foschio's November 25, 1992 Memorandum and Order was neither clearly erroneous nor contrary to law. The Court also denied Scozzafava's motion for disclosure of wiretap material pursuant to 18 U.S.C. § 2518(8)(d) based in part on the government's representation that it would disclose all recorded Scozzafava intercepted conversations.

On July 6, 1993, Scozzafava filed objections to Magistrate Judge Foschio's June 24, 1993 Report and Recommendation. On July 7, 1993, Scozzafava filed objections to Magistrate Judge Foschio's June 24, 1993 Decision and Order. Specifically, Scozzafava objected to the Decision and Order insofar as it denied disclosure of the Curcione wiretap, the severance motion and the motion for further particularization. Scozzafava also renewed his motion for suppression of Rule 404(b) evidence. The Court held oral argument on the objections on August 10 and 26, 1993. At the August 26, 1993 oral argument, Scozzafava withdrew his objection regarding the Curcione wiretap in light of the Court's July 2, 1993 Decision and Order. Scozzafava also withdrew his motion for suppression of Rule 404(b) evidence subject to renewal at the time of the final pretrial conference.

## DISCUSSION

I. *Objections to Report and Recommendation*

 Pursuant to 28 U.S.C. § 636(b)(1), this Court has made a *de novo* review of the June 24, 1993 Report and Recommendation, and after reviewing the submissions and hearing oral argument related to the suppression motion, the Court adopts the Report and Recommendation. Accordingly, for the reasons stated by Magistrate Judge Foschio, the Court denies Scozzafava's suppression motion and finds the government has not violated DR 7–104(A)(1).

II. *Objections to Decision and Order*

Pursuant to 28 U.S.C. § 636(b)(1)(A), the district court "may reconsider any pretrial matter under this subparagraph (A), where it has been shown that the magistrate's order is clearly erroneous or contrary to law."

Having carefully reviewed the submissions of the parties, and Magistrate Judge Foschio's June 24, 1993 Decision and Order as it relates to the severance motion and the bill of particulars, and having heard oral argument from counsel, the Court finds that the June 24, 1993 Decision and Order was neither clearly erroneous nor contrary to law.

## CONCLUSION

For the reasons stated by Magistrate Judge Foschio, the Court finds there to have been no violation of DR–7–104(A)(1), and accordingly adopts his recommendation to deny defendant's suppression motion. The Court further finds that Magistrate Judge Foschio's June 24, 1993 Decision and Order was neither clearly erroneous nor contrary to law.

The parties are directed to appear before the Court on September 24, 1993 at 2:00 p.m. to set a date for trial.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

These matters were referred to the undersigned by the Hon. Richard J. Arcara, on April 8, 1992 and June 22, 1993, respectively, for disposition of all pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A) and for report and recommendation pursuant to § 636(b)(1)(B). The matters are presently before the court on the motion of Defendant Scozzafava to suppress statements based on a purported violation of Disciplinary Rule 7–104(A)(1) of the Code of Professional Responsibility by the Assistant United States Attorney.

### *BACKGROUND*

In Indictment 92–CR–70A, the Defendants were charged, in a single count indictment

dated March 31, 1992, with violations of 18 U.S.C. § 1341 and 18 U.S.C. § 2. Specifically, the Defendants were charged with devising a scheme to defraud and to obtain monies by false pretenses using the United States Postal Service.

On July 31, 1992, this court issued a Memorandum and Order on Defendants' motions for pretrial discovery pursuant to Fed. R.Crim.P. 7(f) and 12(b)(4), granting in part and denying in part Defendants' various requests.

On August 6, 1992, Defendant Scozzafava filed objections to the July 31st Order, requesting additional disclosure of electronic surveillance materials, and particularization in excess of what the court granted in its decision on Scozzafava's motion for a bill of particulars. The Government also moved for reconsideration of the court's schedule for disclosure of Brady material.

On October 22, 1992, this court issued a Decision and Order directing the Government to supply to the court, for an in camera review, all of the disputed electronic surveillance material, along with an affidavit describing the materials and their contents. Scozzafava's motion for reconsideration of the court's decision on certain bill of particulars requests was denied, and the Government's motion for reconsideration was also denied, without prejudice.

On October 28, 1992, Indictment 92–237A, dated September 29, 1992 was unsealed. In the Indictment, Defendant Scozzafava was charged with one count of accepting a bribe, in violation of 18 U.S.C. § 666(a)(1)(B).

The Government complied with the court's October 22, 1992 order on November 9, 1992. In a Memorandum and Order dated November 25, 1992, this court concluded that the disputed wiretaps were not relevant to the instant Indictment and denied Scozzafava's motion for disclosure of the wiretap information.

On December 8, 1992, Defendant Scozzafava filed a Notice of Motion in Indictment 92–CR–70A seeking the relief that is the subject of this Report and Recommendation. He also sought severance under Fed.R.Crim.P. 14 and an order in limine. Those matters will be addressed in a separate Decision and Order. The Government filed its response to the motions on January 4, 1993.

On January 12, 1993, Scozzafava filed a notice of motion in Indictment 92–CR–237A, seeking a bill of particulars, disclosure pursuant to Fed.R.Evid. 404(b), and disclosure of Brady material. The Government filed its response to the motion, along with a bill of particulars on January 25, 1993. In his Reply Memorandum, Scozzafava requested further particularization and a disclosure schedule for Brady material similar to that ordered in Indictment 92–CR–70A. These matters will be addressed in the aforementioned separate Decision and Order.

A suppression hearing was conducted on January 28, 1993. The testimony of Agent Richard B. Rozicki of the Internal Revenue Service (IRS), Agent David Todtenhagen of the Federal Bureau of Investigation (FBI), and Assistant United States Attorney Kathleen M. Mehltretter was taken. The following exhibits were entered into evidence: Government Exhibits 1–12, 14, 17–19, Defendant's Exhibits A–D, and Court Exhibits 1–3. At the suppression hearing, defense counsel requested that the motion to suppress in 92–CR–70A also be treated as filed under Indictment 92–CR–237A and the request was granted.

On February 2, 1993, oral argument was heard on the motions for pretrial discovery in 92–CR–237A, and the motions for severance and an order in limine in 92–CR–70A.

On February 5, 1993, Scozzafava filed a submission regarding additional disclosure of electronic surveillance materials and bill of particulars requests. These matters will also be addressed in the Decision and Order.

Memoranda of law were filed on the suppression issue by Scozzafava on February 26, 1993, and by the Government on March 12, 1993. Scozzafava filed a Reply Memorandum on March 31, 1993. Oral argument on the suppression motion was heard on April 22, 1993.

For the reasons that follow, Scozzafava's motion to suppress statements should be DENIED.

## FACTS

At the suppression hearing, Agent Rozicki of the IRS testified that, during the period of October through December 1990, he was assigned to investigate political corruption in Niagara County. (T. 12).[1] Pursuant to a subpoena issued for this hearing by Scozzafava, Rozicki was directed to search the IRS investigative files for documents requested in the subpoena relative to this matter. (T. 12–13). As a result of that search, Rozicki determined that there were no independent records generated by IRS agents involved in the investigation. (T. 13).

Agent Todtenhagen of the FBI testified that he was the Project Manager for a joint investigation of political corruption in Niagara County, involving the FBI, the New York State Police and the IRS. (T. 15). During the investigation, he consulted periodically with Assistant United States Attorney Kathleen Mehltretter, Chief of the Criminal Division of the United States Attorney's office. (T. 16).

Todtenhagen testified that, on October 10, 1990, Defendant Louis Scozzafava and Mark Scott, a County Legislator, were approached in an effort to obtain their cooperation in the investigation. (T. 17). Neither individual was informed that the other had been approached. (T. 18). On or about October 10, 1990, Scozzafava retained an attorney and entered into discussions with the U.S. Attorney's office. (T. 18). On November 13, 1990, Scozzafava's attorney advised Mehltretter that a proposed pre-plea agreement had been rejected by Scozzafava. (T. 19–21; Gov't Exh. 2). Mehltretter responded by letter on November 14, 1990 that the Government's investigation would therefore continue. (T. 21; Gov't Exh. 2). As of November 15, 1990, Todtenhagen learned that the plea discussions with Scozzafava had broken down. (T. 20). Scott, however, who was also represented by counsel, agreed to cooperate with the Government, (T. 25), and to have recording devices installed in his home, his automobile or on his person. (T. 26).

Todtenhagen testified that, sometime between November 15, 1990 and December 4, 1990, a determination was made by the investigators, in consultation with Mehltretter, that Scott, while electronically wired, should have contact with Scozzafava. (T. 41–45). Before the recordings with Scozzafava were authorized, it had been determined that Scozzafava was a "predicated" individual, meaning that the investigation had revealed his involvement in criminal activity. (T. 34–35). On December 4, 1990, during a telephone conversation between Scott and Scozzafava, a meeting was scheduled for December 6, 1990. (T. 47). Prior to the meeting, Todtenhagen advised Scott to obtain information from Scozzafava regarding Scozzafava's discussions with the FBI and other matters under investigation by the joint task force. (T. 48–49). Scott was never instructed to discuss with Scozzafava any matters that Scozzafava had discussed with his attorney or matters of defense strategy. (T. 56). To Todtenhagen's knowledge, all procedures and regulations were followed in accordance with law, including applicable Justice Department and FBI policy and guidelines, to authorize Scott's recordings of conversations with Scozzafava. (T. 57). On December 7, 1990, Todtenhagen advised Scott to clarify a matter with Scozzafava from the December 6, 1990 conversation, which was then under investigation and for which Scozzafava was subsequently indicted. (T. 62–63).

Todtenhagen further testified that he was advised by Mehltretter that, during the time that Scozzafava was engaged in plea negotiations with the Government, from October 10, to approximately November 15, 1990, the FBI should have no contact with him. (T. 77–78). However, if Scozzafava was to contact Scott, the FBI told Scott to record the conversation. (T. 79). In a letter dated December 4, 1990, Ms. Mehltretter had advised that all contacts between Scott and Scozzafava were to be recorded. (T. 105). Mehltretter had input in specifying the topics that were going to be discussed by Scott and Scozzafava on December 6 and 7, 1990, although she never personally advised Scott regarding his contacts with Scozzafava. (T. 110–111). Todtenhagen testified that the information that Scott was to obtain from Scoz-

---

**1.** T. references are to the transcript of the suppression hearing conducted on January 29, 1993.

zafava concerned completed criminal activity. (T. 126).

Mehltretter testified that a document, known as the Thornburgh Memorandum, relating to communications with persons represented by counsel, was received at the United States Attorney's Office on June 18, or 19, 1989. (T. 152). She became familiar with the Thornburgh Memorandum during the course of her involvement in the Niagara County investigation. (T. 152). Mehltretter stated that she discussed the Thornburgh Memorandum with an FBI agent in the context of the Second Circuit case, *United States v. Hammad*, 858 F.2d 834 (2nd Cir.1988). (T. 154).

Mehltretter also testified that, during November and December of 1990, she was aware that Scozzafava was represented by an attorney, but that no charges had yet been filed against Scozzafava. (T. 160). She believed that the recording of conversations between Scott and Scozzafava was authorized and fully complied with the Thornburgh Memorandum. (T. 161). According to Mehltretter, the recording of those conversations was done for the purpose of furthering an ongoing investigation. (T. 162). Scott was never authorized to obtain evidence regarding conversations between Scozzafava and his attorney or information regarding defense strategy. (T. 165). It was determined by the agents, in concurrence with Mehltretter, that Scott would have contact with Scozzafava, since the two had a business and personal relationship, and it would appear suspicious, and thereby impair Scott's effectiveness as a cooperating witness, as to both the Scozzafava and other pending investigations, if Scott was to avoid contact with Scozzafava. (T. 172–173).

Mehltretter also testified that she authorized the taping of conversations between Scott and Scozzafava because she was interested in learning whether Scozzafava intended to influence the testimony of future grand jury witnesses. (T. 173).

## DISCUSSION

Scozzafava contends that the recorded conversations between himself and Mark Scott should be suppressed on the grounds that they were recorded in violation of Disciplinary Rule 7–104(A)(1) of the Code of Professional Responsibility. DR 7–104(A)(1) provides that

> [d]uring the course of the representation of a client a lawyer shall not ... [c]ommunicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by a lawyer in that matter unless the lawyer has the prior consent of the lawyer representing such other party or is authorized by law to do so.

*See* New York Judiciary Law, Appendix, at p. 350 (McKinney 1992). The Rule is applicable to attorneys admitted to practice in New York State.

It is well established that in the Second Circuit DR 7–104(A)(1) is applicable to Assistant United States Attorneys in criminal prosecutions. *See United States v. Hammad*, 858 F.2d 834, 837–38 (2d Cir.1988), *cert. denied*, 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990); *United States v. Jamil*, 707 F.2d 638, 645 (2d Cir.1983). In *Hammad*, the Second Circuit examined the question "to what extent does DR 7–104(A)(1) restrict the use of informants by government prosecutors prior to indictment, but after a suspect has retained counsel in connection with the subject matter of a criminal investigation?" *Hammad, supra*, at 839. While concluding that the rule should apply in this phase of an investigation, the court also stated that this be done with "restraint ... to avoid handcuffing law enforcement officers in their efforts to develop evidence." *Hammad, supra*, at 838. In this case, like *Hammad*, Scozzafava's conversations with Scott were consensually recorded by Scott, acting as an undisclosed Government cooperating witness, during a period when Scozzafava was a target of a formal criminal investigation and was represented by counsel.

In *Hammad*, the Second Circuit recognized that "prosecutors have a responsibility to perform investigative as well as courtroom-related duties in criminal matters." *Hammad, supra*. The court found that the "authorized by law" exception to DR 7–104(A)(1) permitted a prosecutor, consistent

with professional ethics, to "employ legitimate investigative techniques in conducting or supervising criminal investigations, and the use of informants to gather evidence against a suspect will frequently fall within the ambit of such authorization." *Hammad, supra.*

In *Hammad,* the prosecutor issued a sham subpoena for an informant, who then met with a suspect and recorded their conversation. The Second Circuit found that the false subpoena was used "to create a pretense that might help the informant elicit admissions from a represented suspect." *Hammad, supra,* at 840. Under those circumstances, the use of that technique, which "contributed to the informant's becoming the alter ego of the prosecutor," was held to have violated the disciplinary rule. *Hammad, supra.* The court made clear, however, that "the use of informants by government prosecutors in a preindictment, non-custodial situation, absent the type of misconduct that occurred in this case, will generally fall within the 'authorized by law' exception to DR 7–104(A)(1)." *Hammad, supra,* at 839.

The Second Circuit has recently revisited the application of DR 7–104(A)(1) to a criminal investigation. In *United States v. DeVillio,* 983 F.2d 1185 (2d Cir.1993), the court found no violation of the disciplinary rule where preindictment conversations with two suspects, who were represented by counsel, were recorded by a government informant. The court stated that absent "evidence of any violation rising to the level of the one ... considered in *Hammad,*" prosecutors cannot be held to "overstep the broad powers of their office" thereby violating the disciplinary rule. *DeVillio, supra,* at 1192.

■ Scozzafava contends that Mehltretter, as the Assistant U.S. Attorney responsible for the investigation, violated the disciplinary rule in this case because she participated in originating the plan of using the informant to communicate with an individual known to be represented by counsel, participated in specifying the topics to be discussed, issued a directive that all contacts between Scott and Scozzafava were to be recorded, required Scott to record conversations as part of his plea agreement, and purportedly misapprehended the decision in *Hammad. See* Defendant's Memorandum of Law in Support of Motion, filed February 26, 1993, at p. 15. The court is unconvinced that any of these factors take the conduct at issue outside the "authorized by law" exception of DR 7–104(A)(1).

The *Hammad* court clearly intended that prosecutors be able to utilize undercover informants in a pre-indictment, non-custodial situation, in the absence of some egregious misconduct suggestive of pretense or unfair dealing which would disqualify the Government's behavior from reliance upon the "authorized by law" exception. *Hammad, supra,* at 840. Here, Mehltretter employed no illegitimate investigative technique, akin to the sham subpoena in *Hammad,* to elicit admissions from Scozzafava. The court notes that, to the extent that Mehltretter set the parameters of Scott's discussions with Scozzafava, Scott operated at Mehltretter's direction and could be considered her "alter ego" to meet the threshold, established by *Hammad,* for applying the disciplinary Rule. *See. Hammad, supra.* While Mehltretter did not directly supervise Scott's day-to-day undercover activity, her general supervisory authority over the investigation makes it appropriate to attribute Scott's conduct to her for purposes of the required *Hammad* analysis. In the absence of some misconduct on her part, however, this conclusion does not mandate a finding that Mehltretter violated the disciplinary rule under the analysis of *Hammad.*

No district court in this Circuit, which has applied *Hammad,* has found a violation of the disciplinary rule.[2] *See United States v.*

---

**2.** In fact, only the Second Circuit court has purported to apply DR 7–104(A)(1) in a pre-indictment, non-custodial setting. All other courts of appeals, which have considered the issue, have refused to so apply the rule. *See United States v. Ryans,* 903 F.2d 731 (10th Cir.), *cert. denied,* 498 U.S. 855, 111 S.Ct. 152, 112 L.Ed.2d 118 (1990);

*United States v. Fitterer,* 710 F.2d 1328 (8th Cir.), *cert. denied,* 464 U.S. 852, 104 S.Ct. 165, 78 L.Ed.2d 150 (1983); *United States v. Kenny,* 645 F.2d 1323 (9th Cir.), *cert. denied,* 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981); *United States v. Lemonakis,* 485 F.2d 941 (D.C.Cir.1973), *cert. denied,* 415 U.S. 989, 94 S.Ct. 1586, 1587,

*Santopietro*, 809 F.Supp. 1008 (D.Conn.1992); *United States v. Harloff*, 807 F.Supp. 270 (W.D.N.Y.1992); *United States v. Buda*, 718 F.Supp. 1094 (W.D.N.Y.1989); *United States v. Chestman*, 704 F.Supp. 451 (S.D.N.Y. 1989). In *Harloff* and *Buda, supra*, Chief Judge Telesca found that the conduct of a prosecutor, who acquiesced to the wiring of an informant, came within the "authorized by law" exception to DR 7–104(A)(1). In *Buda*, the prosecutor "in no way attempted to direct the content of the conversation with the defendant so as to beguile him into giving his case away." *Buda, supra*, at 1096. This court does not read the facts in *Buda* or *Harloff* as suggestive of possible conduct that would violate DR 7–104(A)(1). In the absence of misconduct, similar to that by the prosecutor in *Hammad*, which exceeds the lawful authority of the Government attorney, no violation of DR 7–104(A)(1) occurs where a prosecutor proposes the wiring of an informant for the purpose of recording conversations with a represented target of a criminal investigation, or even suggests the topics to be discussed, such actions being inherent in the exercise of the Government attorney's authority to investigate effectively and prosecute crimes.

■ Under *Hammad*, DR 7–104(A)(1) is applicable to Government attorneys during pre-indictment non-custodial investigative activity using undisclosed informants to consensually intercept conversations with represented targets, but the use of such undisclosed informants acting at the prosecutor's direction is an activity "authorized by law." Such activity is therefore exempt from the rule, regardless of whether the target is represented, unless the conduct of the prosecutor is determined to be ethically or otherwise improper to such an extent as to place it outside the "authorized by law" exception. The analysis then is properly focused on whether the professional behavior of the prosecutor merited judicial approbation and sanctions, either by disciplinary action, suppression of evidence, or both, which is "best

accomplished by case-by-case adjudication...." *Hammad, supra*, at 840.

This approach is consistent with the purpose of the disciplinary rules, which is the regulation of attorney conduct, rather than the protection of individual rights. *See Hammad, supra*, at 839 ("... Code [of Professional Responsibility] is designed to safeguard the integrity of the profession and preserve public confidence in our system of justice"). *See also, People v. Green*, 405 Mich. 273, 274 N.W.2d 448, 454 (1979) (the provisions of the Code of Professional Responsibility are "not constitutional or statutory rights guaranteed to individual persons"). The purpose of DR 7–104(A)(1) is to "preserve the integrity of the lawyer-client relationship by protecting the represented party from the superior knowledge and skill of the opposing lawyer." ABA/BNA Lawyers' Manual on Professional Conduct § 71:302 (Robert S. Wells, *et al.* eds., 1989). Thus, even if the decision to further investigate Scozzafava, using Scott as an undisclosed wired informant, was not based on information of suspected on-going criminal activity by Scozzafava, *Hammad* does not explicitly forbid Government attorneys from engaging in such investigatory tactics, unless their conduct may otherwise be deemed improper. The question in this case is whether the record shows any purpose of this investigation to interfere with Scozzafava's client-attorney relationship, or to engage in deceitful, unfair, overreaching or abusive conduct, which may constitute a violation of the disciplinary rule.

Here, there is simply no evidence of professional misconduct by the Government attorney. Mehltretter took steps consistent with guidelines established by the Department of Justice to avoid invading the zone of privilege established for attorney-client communications. There was no deliberate effort to learn defense strategy or tactics, to "invade" the defense camp, or otherwise to interfere with the ability of Scozzafava's re-

39 L.Ed.2d 885 (1974). Three Circuits have applied the rule in a pre-indictment, but custodial, setting. *See United States v. Killian*, 639 F.2d 206 (5th Cir.), *cert. denied*, 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1981); *United States*

*v. Durham*, 475 F.2d 208 (7th Cir.1973); *United States v. Thomas*, 474 F.2d 110 (10th Cir.), *cert. denied*, 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160 (1973).

tained attorney to advise and assist him. In fact, following receipt of a letter from Scozzafava's attorney, Mehltretter specifically advised the attorney in writing that the investigation of Scozzafava would continue. Additionally, it was established, prior to authorizing the use of the informant, that Scozzafava was a predicated individual and, as such, had been involved in criminal activity. Mehltretter also testified that continued contacts by Scott with Scozzafava over the relevant period were needed to secure other evidence of potential on-going criminal conduct by Scozzafava, and to further assure Scott's undisclosed undercover status. Whether such continued contacts were in retrospect justified or necessary, Mehltretter's apparent good-faith belief that they were in deciding to utilize Scott as a cooperating witness, in the particular circumstances presented here, negates any basis to conclude that she had overstepped her authority. Accordingly, Mehltretter's conduct as the supervising Government attorney cannot be held to constitute professional misbehavior within the holding of *Hammad*, and the disciplinary rule was not contravened.[3]

### CONCLUSION

Based on the foregoing analysis, Scozzafava's motion to suppress statements, on the basis of a purported violation of DR 7–104(A)(1), should be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 30(a).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir.1988).

SO ORDERED.

DATED: June 22, 1993.

---

**3.** A limited interpretation and application of *Hammad* to the instant facts is also appropriate given the criticism of the decision for the lack of clear guidance as to what circumstances fall within its holding, and the uncertainties it has created regarding the proper conduct of criminal investigation within this Circuit. *See* Marc A. Schwartz, Note, *Prosecutorial Investigations and DR 7–104(A)(1)*, 89 Colum.L.Rev. 940, 946–954 (1989) (concluding that DR 7–104(A)(1) should be inapplicable to criminal investigations).