UNITED STATES of America

v.

Dennis Michael NOURI et al., Defendants.

No. 07 Crim. 1029(DC).

United States District Court, S.D. New York.

April 29, 2009.

Baker & McKenzie LLP by Douglas M. Tween, Esq., Robert W. Tarun, Esq., New York, NY, for Defendant Dennis Michael Nouri.

Lev L. Dassin, Acting United States Attorney by Reed M. Brodsky, Assistant United States Attorney New York, NY.

### MEMORANDUM DECISION

CHIN, District Judge.

In this case, in an indictment filed on November 8, 2007, defendant Dennis Michael Nouri ("Nouri") has been charged with criminal securities violations. Prior to the filing of the indictment, Nouri was the subject of a civil investigation by the Securities and Exchange Commission (the "SEC"). He was aware of—and eventually engaged counsel to represent him in—the SEC investigation. He did not know, however, that at the same time he was also the subject of a covert criminal investigation being conducted by the United States Attorney's Office for the Southern District of New York (the "USAO") and the Federal Bureau of Investigation (the "FBI").

During the course of the criminal investigation, although the USAO was aware that Nouri was represented by counsel in the SEC investigation, the FBI arranged for two cooperating witnesses to secretly record their conversations with Nouri. During the course of those conversations, Nouri made allegedly incriminating statements. Of course, Nouri's counsel never consented to these communications or the recording thereof.

Nouri moved *in limine* to suppress certain of the recorded conversations on the basis that the USAO violated Disciplinary Rule 7–104(A)(1), which prohibits a lawyer (or someone acting on the lawyer's behalf) from communicating with a party the lawyer knows to be represented by counsel "in that matter," unless the lawyer has the consent of other counsel or the lawyer is "authorized by law" to make the communication. I heard oral argument, and concluded that an evidentiary hearing was required to decide the motion.

The USAO thereafter moved for reconsideration, arguing that the motion should be denied without a hearing. Upon further consideration, and as discussed more fully below, I now conclude that the communications in question were "authorized by law." Accordingly, the USAO's motion for reconsideration is granted and Nouri's motion to suppress is denied-without a hearing.

### BACKGROUND

#### A. The Indictment

As charged in the indictment, Nouri was CEO, President, and a stock holder of Smart Online, Inc. ("Smart Online"). (Ind. ¶ 1). His brother, defendant Reeza Eric Nouri ("Eric Nouri"), was an employee of Smart Online and owned thousands of shares of Smart Online stock. (*Id.* ¶ 2). Smart Online developed and marketed internet-delivered software applications and data resources for small businesses. (*Id.* ¶ 3). Beginning on April 15, 2005, Smart Online's common stock was traded on the National Association of Securities Dealers' Over–The–Counter Bulletin Board. (*Id.* ¶ 4). Defendants Ruben Serrano, Alain Lustig, and Anthony Martin (the "Brokers") were registered brokers in Manhattan. (*Id.* ¶¶ 5–6).[1] The Brokers sold Smart Online stock. (*Id.*).

The indictment charges defendants with conspiring in a scheme to defraud customers of Smart Online stock. (*Id.* ¶¶ 10–11). Nouri and Eric Nouri are charged with paying secret bribes to the Brokers to induce them to sell the stock. (*Id.* ¶ 16a-b). According to the indictment, the Nouris "arranged for Smart Online to enter into fictitious agreements that made it

---

1. Defendant Anthony Martin is charged in a separate indictment. 07 Cr. 1226(DC).

appear as if the payments were made in return for services rendered to Smart Online." (*Id.* ¶ 16c). The Brokers did not disclose the bribes to their customers. (*Id.* ¶ 11). The indictment charges the Brokers with violating their respective fiduciary duties and making materially misleading statements to their customers. (*Id.*).

## B. *The Investigation*

From approximately December 2005 to September 2007, the SEC and the USAO conducted "parallel criminal and civil investigations into whether Nouri was bribing brokers to purchase Smart Online securities." (Gov't 3/13/09 Letter Br. ¶ 1). The USAO and the FBI conducted a covert, criminal investigation. (*Id.*). The SEC conducted an overt, civil investigation. (*Id.*). The agencies shared information. (*Id.*).

On January 10, 2006, Smart Online announced that its securities would be listed on NASDAQ in one week. (*Id.* ¶ 3). On January 17, 2006, the SEC suspended trading in Smart Online's securities and subpoenaed Nouri. (*Id.*). On January 25, 2006, Nouri retained counsel. (*Id.*). That same day, both the SEC and the USAO became aware that Nouri was represented by counsel in the SEC action. (*Id.* ¶ 4).

In late 2005 and early 2006, the FBI met with William Blume and David Gardner. (*Id.* ¶ 2). Blume and Gardner agreed to cooperate with the criminal investigation as cooperating witnesses (the "CWs"). From February 2006 through July 2007, the CWs separately recorded conversations with Nouri. (*Id.* ¶ 5). The USAO proffers to the Court that:

> [T]he USAO and the FBI did not instruct the [CWs] to elicit privileged communications from Nouri. . . . Further, Special Agent Karounos specifically instructed Blume not to find out anything

Nouri discussed with his counsel. Moreover, the AUSA at the time specifically instructed Gardner that the USAO and the FBI did not want to know, and that Gardner should not ask, about Nouri's conversations with counsel. (*Id.* ¶ 6).

On July 24, 2007, the FBI instructed Gardner to "try to persuade Nouri to come to New York so Nouri would be arrested there, including telling Gardner to say that Gardner had received an SEC subpoena and wanted to discuss it with Nouri." (*Id.* ¶ 8). Gardner did as instructed. No SEC subpoena was actually issued. (*Id.*).

Nouri was arrested in September 2007 and indicted in November 2007. This case is scheduled to be tried in June 2009.

## C. *Procedural History*

On February 27, 2009, the Court heard oral argument on defendants' *in limine* motions, including Nouri's motion to suppress the recorded conversations. I concluded that a hearing was necessary on the suppression motion based on what I heard from counsel that day. (2/27/09 Tr. at 29). The Government voiced its intent to move for reconsideration of my ruling on the need for a hearing. (*Id.* at 30).

On April 9, 2009, I heard argument on the Government's motion for reconsideration. I conclude now that a suppression hearing is unnecessary. The motion for reconsideration is granted. For the following reasons, Nouri's motion to suppress the recorded conversations is denied.

## *DISCUSSION*

### A. *Applicable Law*

Disciplinary Rule 7–104(A)(1) provides:

A. During the course of his representation of a client a lawyer shall not:

1. Communicate or cause another to communicate on the subject of the

representation with a party the lawyer knows to be represented by a lawyer in that matter unless the lawyer has the prior consent of the lawyer representing such other party or is authorized by law to do so.

In this case, there is no dispute that Nouri's lawyer did not consent to the communications. Thus, to prove a violation of the Rule, Nouri must show that: 1) the communication concerned the same "matter" for which he was represented by counsel; 2) the communication was not authorized by law; and 3) the communication was made by or on behalf of a prosecutor, the Assistant United States Attorney (the "AUSA") working with the FBI and the CWs on the criminal investigation.[2]

### 1. The Same "Matter"

The Second Circuit has advised that "the vague terms of DR 7–104(A)(1) should be construed narrowly in the interests of providing fair notice to those affected by the Rule and ensuring vigorous advocacy." *Grievance Comm. for S. Dist. of New York v. Simels*, 48 F.3d 640, 650 (2d Cir.1995). In *Simels*, the Second Circuit concluded that Simels, a defense attorney, did not violate the Rule in speaking to Harper—a potential witness in the lawyer's client's drug conspiracy case and a potential co-defendant of the client in the murder of a government witness in the drug conspiracy case. *Id.* at 645. Harper was arraigned and represented by counsel in the murder case but Simels's client was not yet charged with the murder. *Id.* at 643. The Court found that Harper was not a "party" in the same "matter" in either case. *Id.* at 645.

The Second Circuit has not yet determined whether parallel SEC and USAO investigations constitute the same "matter" for purposes of the Rule. The issue arose at the District Court level in *United States v. Chestman*, 704 F.Supp. 451 (S.D.N.Y.1989). In *Chestman*, the defendant moved to suppress two taped conversations recorded on behalf of the USAO after the defendant appeared with an attorney at the SEC. *Id.* at 453. The District Court did not decide whether the parallel SEC and USAO investigations were the same "matter." Instead, the Court assumed, for purposes of the motion, that because the defendant was represented in the civil SEC matter, he was represented in the criminal proceeding as well. *Id.* at 454. The Court ultimately concluded that the Rule was not violated because the recordings were authorized by law. *Id.*

### 2. Authorized by Law

Even if a party is represented by counsel in the same matter, opposing counsel may communicate with the party provided the communication is "authorized by law."

In *United States v. Hammad*, 858 F.2d 834, 839 (2d Cir.1988), the Second Circuit addressed the question: "[T]o what extent does DR 7–104(A)(1) restrict the use of informants by government prosecutors prior to indictment, but after a suspect has retained counsel in connection with the subject matter of a criminal investigation?" In *Hammad*, a prosecutor prepared a sham subpoena for an informant "to create a pretense that might help the informant elicit admissions from a represented suspect." *Id.* The Court held that "[t]he use of informants by government prosecutors in a preindictment, non-custodial situation,

---

**2.** The AUSA was a different prosecutor from the prosecutor now representing the Government in this matter.

absent the type of misconduct that occurred in this case, will generally fall within the 'authorized by law' exception to DR 7–104(A)(1) and therefore will not be subject to sanctions [such as suppression]." *Id.* at 840.

■ The standard set out in *Hammad* has been applied by both the Second Circuit and other courts in this district. In *United States v. DeVillio*, 983 F.2d 1185, 1192 (2d Cir.1993), the Second Circuit held that the Government's use of CWs to record conversations of suspects who had been arraigned and were represented by counsel but were not yet indicted did not violate the Rule because there was "no evidence of any violation rising to the level of the one we considered in *Hammad*." Similarly, in *Chestman*, the Court found that the Rule was not violated when the Government's CW secretly recorded conversations with Chestman after he appeared with an attorney at the SEC because the "recordings were pre-indictment, non-custodial, and occurred in the absence of any 'egregious misconduct'—such as the prosecutor's use in *Hammad* of a sham Grand Jury subpoena—that might support their suppression." 704 F.Supp. at 454. *See also United States v. Benjamin*, 72 F.Supp.2d 161, 192 (W.D.N.Y.1999) ("The use of an undisclosed informant acting at the direction of the Government is an activity 'authorized by law' and thus is exempt from DR 7–104(A)(1) regardless of whether the target is represented, absent a determination that the conduct is improper, ethically or otherwise, so as to place such conduct outside the 'authorized by law' exception."). Accordingly, in this Circuit, the pre-indictment, surreptitious recording by a CW of a target known by the Government to be represented by counsel is "authorized by law" as long as the Government does not engage in "egregious misconduct."

### 3. *By or on Behalf of An Attorney*

■ "[T]he purpose of DR 7–104(A)(1) is to protect a defendant from the danger of being 'tricked' into giving his case away by opposing counsel's artfully crafted questions." *United States v. Jamil*, 707 F.2d 638, 646 (2d Cir.1983). The Rule applies to attorneys and those acting at the behest of an attorney. *See United States v. Thompson*, 35 F.3d 100, 104 (2d Cir.1994) ("*Hammad* does not support the extension of a rule of professional conduct governing attorneys to an agent performing an investigative function."). If an informant is working with the Government, the prosecutor must "in no way attempt[ ] to direct the content of [the informant's] conversation with the defendant so as to beguile him into giving his case away." *United States v. Buda*, 718 F.Supp. 1094, 1096 (W.D.N.Y.1989).

### B. *Application*

Nouri argues that his recorded statements should be suppressed because the USAO violated DR 7–104(A)(1) by communicating with him, via CWs, even though the USAO knew he was a represented party in the same matter—the SEC case. Nouri further contends that the USAO engaged in egregious misconduct because the CWs attempted to elicit privileged attorney-client communications and referenced a nonexistent subpoena. The USAO argues that the SEC investigation and the criminal investigation were not the same "matter," Nouri was not represented in the criminal matter, and the USAO's conduct was authorized by law in any event.

### 1. *The Same "Matter"*

■ In this case, the SEC and the USAO conducted parallel investigations into Nouri's bribing brokers to sell Smart Online securities. Nouri was represented

by counsel in the SEC matter and the USAO was aware of his representation before it secretly recorded Nouri's conversations with the Cws.

Under these circumstances, I conclude that the SEC and USAO investigations of Nouri were the same "matter." They did not concern two separate and distinct subjects. To the contrary, they were parallel investigations, arising from the same course of conduct. The USAO admits that the agencies shared information: "As is customary in such circumstances, the criminal authorities shared certain non-grand jury material during its investigation with the SEC, and the SEC shared certain information that it obtained during its civil investigation with the criminal authorities." (Gov't 3/13/09 Letter Br. ¶ 1). The USAO also concedes that it was aware that Nouri was represented by counsel before making the recordings and followed special procedures in light of his representation: "[B]ecause Nouri was represented by counsel in a parallel SEC investigation, the [AUSA] in charge of the criminal investigation at the time followed internal procedures and received supervisory approval, including from the U.S. Attorney at the time, for pre-indictment, covert recorded conversations with Nouri by individuals cooperating with the Government." (*Id.* ¶ 4).

The parties note the absence of any cases on point on the issue of whether parallel SEC and USAO investigations constitute the same matter for purposes of DR 7–104(A)(1). In *Chestman,* which also involved parallel SEC and USAO investigations, the Court assumed the investigations were the same "matter" and decided the motion on the "authorized by law" prong. 704 F.Supp. at 454. The "authorized by law" analysis would not have been necessary if the Court had been of the view that the SEC and USAO investigations were different matters. If anything,

the Court's analysis in *Chestman* supports the conclusion that the SEC and USAO cases were the same "matter." The Second Circuit has noted this conclusion as well: "[S]ince *Hammad* was decided, the focus in prosecutor cases has been on the 'authorized by law' exception, which naturally presupposes a violation of the Rule if the exception does not apply." *Simels,* 48 F.3d at 649.

Nouri's representation in the civil case is imputed to the criminal case because the agencies were working together, sharing information, and investigating conduct arising from the same factual basis. Thus, Nouri was a party known to be represented by counsel in the matter that was also the subject of the criminal investigation.

### 2. *Authorized By Law*

The conclusion that the SEC and USAO investigations involved the same matter does not end the inquiry. DR 7–104(A)(1) is not violated if the communications—between the CWs and Nouri—were authorized by law. Nouri argues that the communications were not "authorized by law" because the USAO engaged in "egregious misconduct" in two respects: first, the CWs attempted to elicit attorney-client privileged information (including the defense strategy), and second, one of the CWs referenced a nonexistent subpoena.

#### a. *Eliciting Privileged Information*

■ Nouri argues that the Government engaged in egregious misconduct by permitting the CWs to surreptitiously record his conversations immediately following meetings with his counsel (at the time, Skadden Arps). According to Nouri, the timing of the recordings coupled with the statements of the CWs suggests "that the government, utilizing superior legal skills, permitted the informants to learn information about his conversations with his attor-

ney or his legal strategy so as to beguile him into giving his case away." (Def. 3/18/09 Mem. at 10–11).

Again, the Government's surreptitious recording of Nouri, in this pre-indictment situation, is not inappropriate, in and of itself. The case law in this Circuit permits such investigative techniques provided the Government does not engage in egregious misconduct. Here, I conclude, as a matter of law, that the Government did not engage in egregious misconduct.

The recordings themselves are the best evidence that the USAO did not engage in egregious misconduct. They show that Nouri brought up the subjects that he now argues should be suppressed—such as SEC subpoenas and depositions and his representation by counsel—and was trying to persuade the CWs to lie.

Nouri points to certain segments of the recorded conversations that, he argues, show that the CWs were attempting to elicit defense strategy. At oral argument, defense counsel repeatedly referenced Gardner's questioning Nouri with "what's your plan now?" as evidence of his attempt to elicit privileged information. (4/9/09 Tr. 20–21; GX G at 5). On its face, this question is troubling. Placed in context, however, the question is simply part of the natural flow of conversation. Gardner only inquired as to Nouri's "plan" after Nouri told him that he wanted to "give [him] his version." (GX G at 3). Nouri went on to explain a sequence of events involving the SEC's investigation: "they pulled back, so we are going with heads on." (Id. at 4). Gardner's direct response of "what's your plan now?" does not even hint at an attempt to elicit defense strategy; it was merely conversation and a response to a subject that Nouri himself brought up. Indeed, if Gardner had resisted Nouri's efforts to give him information, Nouri's suspicions may very well have been aroused.

The other statements referenced by Nouri to support his argument are equally unavailing. The recordings reveal that Nouri was trying to prepare Gardner and Bloom for SEC depositions. Nouri explained to Gardner: "I think it's important for you to be subpoenaed, which is my idea, so you can tell the story." (GX G at 14). Nouri then fed Gardner the answers to questions he believed the SEC would likely ask: "SEC says, did you get paid, yes. Did you lie, because I was putting time ... I was taking time from the company and putting it here." (Id.). Similarly, Nouri wanted Bloom to appear before the SEC: "I need you to go in front of the SEC to do your deposition, but they have to know that you were not manipulating the market." (Def. 4/1/09 Letter, Nouri 41 at 6). Nouri then advised Bloom on the SEC's possible questions and the preferred answers: "[H]ave you met with Mitch? No. Have you met with Mira? No." (Id. at 8). After approximately a forty-five minute conversation on this subject, Bloom asked Nouri, "So, do you think you can have like one of your lawyers prep me." (Id. at 34). Nouri alleges that Bloom's question was another attempt to elicit defense strategy. The transcript of the recording, read as a whole, shows that Nouri's argument is meritless. Again, the CW's question was a natural response in the flow of an ongoing conversation.

Finally, Nouri points to references to Skadden Arps in the recordings as evidence that the CWs were attempting to extract defense strategy. For example, Nouri quotes the following segment:

NOURI: They [Skadden Arps] said they have in fact ... you might have a conflict with the company ... it's not illegal company.

CW: Well, it's ... it's ...

NOURI: It's not illegal though.

CW: it's illegal. It's illegal. It's illegal.

NOURI: No, I've asked them [Skadden Arps] ...

(GX G at 16). Nouri, however, initiated this conversation and Gardner did not question him about it. The following conversation immediately preceded the segment highlighted by Nouri:

Nouri: I told you, I ... I'm with Skadden Arps, you know ... you know who they are?

CW: Yeah.

Nouri: The largest law firm.

CW: Right.

Nouri: They said they have in fact ...

(*Id.*). Thus, Gardner's statements were merely responsive and do not suggest that the AUSA instructed him to elicit defense strategy.

There is no basis in the recordings to support Nouri's argument that the CWs were attempting to elicit privileged information. In addition, the USAO has proffered that the CWs were instructed *not* to inquire about privileged information. Moreover, Nouri has not pointed to any privileged information that was actually disclosed to the USAO. The recordings, taken as a whole, do not evidence egregious misconduct.[3] Accordingly, the communications were authorized by law and do not violate DR 7–104(A)(1). The recordings may be admitted at trial.

**b.  *Referencing a Nonexistent Subpoena***

Nouri also argues that the USAO violated the Rule by instructing Gardner to lie

about receiving an SEC subpoena. In view of Nouri's statements suggesting that he wanted the CW to be subpoenaed, it is doubtful that the CW's reference to a nonexistent subpoena rose to the level of egregious misconduct. *Compare Hammad*, 858 F.2d at 840 (AUSA issued sham subpoena to informant who surreptitiously recorded represented target using sham subpoena to try to elicit admissions). I need not decide the issue, however, as the Government has agreed not to offer the recording in question (July 24, 2007) into evidence at trial and no recordings were made subsequently. Thus, suppression as to that recording is moot.

**3.  *By Or On Behalf Of An Attorney***

The remaining issue is whether the CWs' communications with Nouri were made by or on behalf of the USAO. Because I conclude that the recordings were authorized by law, I need not decide this issue.

***CONCLUSION***

For the foregoing reasons, Nouri's motion to suppress is denied, without an evidentiary hearing. The Government is permitted to introduce the recorded conversations into evidence at trial.

SO ORDERED.

---

**3.** *See Benjamin,* 72 F.Supp.2d at 192–93 ("Benjamin points to no evidence of professional misconduct by the Government attorney responsible for the investigation and the record reveals none. Specifically, there is no indication that the taping of the telephone conversation between Benjamin and an undercover agent, even if instigated by the Government's attorney, was an attempt by the prosecution to learn defense strategies or tactics or to otherwise interfere with Benjamin's attorney's ability to provide an effective defense in the unrelated state case. As such, the prosecutor's conduct in causing the consensual recording to be made, even if it occurred, is within the holding of *Hammad*, and DR 7–104(A)(1) was not contravened.") (internal citation omitted).